CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 1 6 2008

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BERTHA BLACKISTON,<br>    Plaintiff, | )<br>)<br>) Civil Action No. 7:07cv245 |
| v. | )<br>) |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY<br>    Defendant. | ) By: Hon. Michael F. Urbanski<br>)    United States Magistrate Judge<br>) |

## REPORT AND RECOMMENDATION

Plaintiff Bertha Blackiston ("Blackiston") brought this action pursuant to 42 U.S.C. § 1383(c)(3), incorporating 42 U.S.C. § 405(g), for review of the Commissioner of Social Security's ("Commissioner") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act").

This case is before the court on cross motions for summary judgment and has been referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Following the filing of the administrative record and briefing, oral argument was held on March 5, 2008. Having reviewed the record, and after briefing and oral argument, the undersigned recommends that the decision of the Administrative Law Judge ("ALJ") be affirmed as it was founded on correct legal principles and supported by substantial evidence.

### I.

A reviewing court may neither undertake a <u>de novo</u> review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement

conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## II.

Blackiston completed the 11th grade and obtained her GED. (Administrative Record [hereinafter "R."] 326) For the fifteen years preceding April, 2005, Blackiston worked as a cycle counter performing inventory functions for Home Shopping Network. (R. 326-27) Much of this work involved standing, and Blackiston stated that she stopped working because she could not physically do the job due to pain in her tailbone and hip. (R. 327-28) Blackiston was 45 years old at the time of the administrative hearing.

Blackiston filed an application for social security benefits on January 17, 2006, alleging disability due to chronic pain caused by a disorder in her coccyx with an onset date of April 12, 2005. (R. 47-48) Following administrative denials, an administrative hearing was held on January 26, 2007. (R. 321-358). The ALJ issued a decision on March 6, 2007 finding Blackiston not disabled, and concluding that she retained the residual functional capacity ("RFC") to return to her past relevant work as an inventory clerk/stock control clerk functioning at a light exertional level. (R.19-22) The Appeals Council denied Blackiston's request for review on May 2, 2007, rendering the decision final. (R. 5-7)

2

## III.

Blackiston argues that the ALJ's decision is not supported by substantial evidence and must be reversed because the ALJ gave too little weight to the disability opinion of her treating physician, Dr. Murray Joiner. In sum, Dr. Joiner opined that Blackiston could stand/walk for a total of four hours in an eight hour workday, could sit for a total of one hour in such a workday, and would be absent from work about twice a month due to her tailbone pain and necessary treatment. (R. 299-300) The Commissioner contends that Dr. Joiner's opinion is not supported by clinical and laboratory findings and is inconsistent with other substantial evidence in the record. After reviewing the administrative transcript and briefs and having heard oral argument, the undersigned recommends that the court find that the decision of the Commissioner be affirmed.

An ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. § 404.1527(d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. § 404.1527 (d)(2); Social Security Ruling 96-2p.

The ALJ is to consider a number of factors which include whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and

3

whether the physician is a specialist. 20 C.F.R. § 404.1527. A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide reasons for giving a treating physician's opinion certain weight or explain why she discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.") See also SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.")

The ALJ considered and properly weighed Dr. Joiner's opinion along with the other medical evidence in the record. Before addressing the specifics of Dr. Joiner's opinion, however, it is worth noting that an opinion from a doctor that an individual is disabled and therefore unable to work is not a medical opinion. Rather, it is an opinion on an issue reserved to the Commissioner because it is an administrative finding that is dispositive of the case. 20 C.F.R. § 404.1527(e).

The first medical record in the administrative transcript dates from June 1, 2004, when Blackiston was seen by Dr. David G. Harden for left elbow and coccyx pain. During a subsequent visit on June 28, 2004, Blackiston stated that although she had no injury, she had pain at or around her tailbone for a month. Blackiston also complained of left elbow pain, explaining that she works on a line and uses a compressor gun in her left hand. (R. 151) An x-ray taken that day of her coccyx showed no abnormality. (R. 150) Dr. Harden's note from a subsequent visit on July 16, 2004 states that this x-ray "was read as normal however it showed

4

obvious degenerative change." (R. 148) Dr. Harden suggested that Blackiston get a "donut" to sit on for the next few weeks. In a visit on July 30, 2004, Blackiston told Dr. Harden that she felt better using such a sacral pillow. (R. 146)

There are no medical records concerning the coccyx pain for the next eight months. (R. 136-140) A note from Blackiston's visit to see Dr. Deana A. Young on April 14, 2005 states that "she went to see Dr. Durham for coccyx pain - he pushed on her back/tailbone and recommended cortisone cream over the counter. [She] would like another opinion b/c pain so bad she is having trouble working, asking to be put on light duty." (R. 136) Dr. Young requested that Blackiston be put on light duty for the next three weeks until she could be evaluated by an orthopedic specialist. (R. 135) Over the next few weeks, Blackiston had an MRI of the sacrum and coccyx and an x-ray of her lumbar sacral spine, all of which were normal. In contrast to what Blackiston had told Dr. Harden in 2004, the MRI report noted that Blackiston had a history of prior coccyx fracture. The report concluded that the MRI of the coccyx, sacrum and pelvis were unremarkable and "specifically without abnormality found to explain this patient's pain." (R. 134)

Blackiston was referred to physical therapy ("PT") on May 9, 2005 and received such treatment on a regular basis through the end of July, 2005. The PT intake summary notes that "[m]any years ago she fell on the ice and hurt her coccyx as well as a history of difficult childbirth." (R. 114) The physical therapy progress note indicated that Blackiston reported 50% improvement from the therapy. (R. 98)

Although it appears that Blackiston was seen by an orthopedic specialist, Dr. John Edwards, none of his treatment notes are in the administrative record. However, it appears that

5

Dr. Edwards excused Blackiston from all but light duty work during the period from June 30, 2005 to August 8, 2005.

Blackiston began seeing Dr. Murray E. Joiner, Jr., for pain management on August 8, 2005, (R. 233-39), and his impression was of lumbar spasms and pain, bilateral sacroiliac joint dysfunction and pain, sacral body periosteal inflammation, coccydynia (tailbone pain), bilateral gluteus medius spasms and pain and hip bursitis. (R. 239) Dr. Joiner referred Blackiston for more physical therapy beginning on August 10, 2005, and she received thirteen sessions of PT over the next two months. (R. 167, 181) On September 26, 2005, Blackiston told Dr. Joiner that her tailbone pain increased with PT, and she subsequently reported to the physical therapist that Dr. Joiner had discontinued it and ordered a bone scan. (R. 230) The bone scan taken on September 28, 2005 was normal. It stated that "[s]pecifically, there is no abnormal uptake in the pelvis, sacrum, coccyx." (R. 240)

Blackiston saw Dr. Joiner at least monthly through May, 2006. During that period, Dr. Joiner treated Blackiston with multiple pain injections, a flouroscopic guided coccyx block, and prescribed a TENS unit for home use. The block provided "objectively improved coccydynia" for a short period of time, (R. 224), but Dr. Joiner indicated on November 8, 2005 that Blackiston could not return to her work which she described for him as requiring her to sit on a cement floor with prolonged bending and stooping. (R. 223) A lumbar spine MRI taken on February 2, 2006 was normal. (R. 210) Dr. Joiner performed L4-5 Translaminar Epidural Steroid Injections on March 7, March 28, and May 2, 2006, which provided some improvement. (R. 205-06, 263-67, 273) Blackiston's last visit to Dr. Joiner appearing in the administrative record was on January 24, 2007, at which time she reported "gradual, recurrent left low back and left lower extremity pain since her last visit." (R. 310) Dr. Joiner's impression was

"[e[xacerbation of chronic left low back pain and spasms; left gluteal spasms and pain; lumbar degenerative disc disease with high intensity zone, L4-5, L5-S1, rule out symptomatic degenerative disc disease; and coccydynia." (R. 311)

The record contains several residual functional capacity ("RFC") assessments from state agency physicians. On February 28, 2006, state agency physician Richard Surrusco opined that Blackiston could lift/carry 50 pounds occasionally and 25 pounds frequently, stand/walk for 6 hours and sit for 6 hours. (R. 184-90) Dr. Surrusco's assessment was reaffirmed on reconsideration by Dr. Shirish Shahane on April 3, 2006. (R. 255-61) A Psychiatric Review Technique performed on February 28, 2006 by Dr. Howard Leizer indicated nothing more than mild functional limitations from depression and anxiety, (R. 191-204), and this assessment was reaffirmed upon reconsideration by Dr. Eugenie Hamilton on April 3, 2006. (R. 241-54)

Dr. Joiner completed a functional assessment form on December 6, 2005. On that form, Dr. Joiner indicates that Blackiston could lift/carry 10-15 pounds, stand/walk for 4 hours and sit for 1 hour. (R. 299) Dr. Joiner indicated that Blackiston was not prohibited from any postural activities, and could frequently balance and occasionally climb, stoop, crouch, kneel and crawl. (R. 300) Dr. Joiner assessed no limitation in reaching, handling, feeling, pushing, pulling, seeing, hearing or speaking and no environmental limitations other than temperature extremes, humidity and vibration. (R. 300) Dr. Joiner thought that Blackiston's impairments or treatment would cause her to miss about two days a month. (R. 300)

Thirteen months later, Dr. Joiner declined to provide a functional capacity evaluation when asked to do so by Aetna Life Insurance Company, noting on January 24, 2007 that Blackiston was out of work prior to referral to him. Dr. Joiner noted that "if work capabilities in question recommend FCE." (R. 301)

7

At the administrative hearing, the ALJ used the opinions of the state agency physicians in posing a hypothetical to the Vocational Expert ("VE"). (R. 352-53) The VE testified that Blackiston could perform her prior work as that job is classified in the Dictionary of Occupational Titles ("DOT"), but not as Blackiston described it. The VE explained that the DOT classified the inventory clerk job as being light, but because Blackiston stated that she occasionally had to pick up items weighing up to 50 pounds, it would fall in the medium work category. (R. 350-51) In any event, the VE identified a number of other unskilled light jobs in the national economy that a hypothetical person having Blackiston's RFC could perform. (R. 353-54, 357)

The ALJ crafted Blackiston's RFC consistent with the medical evidence in the record and plainly considered in detail all of the medical evidence. (R. 19-21) The ALJ highlighted the lack of any findings of any abnormality in Blackiston's coccyx noted on any objective testing such as an x-ray, MRI or bone scan. (R. 20) The ALJ also noted the fact that Blackison's treatment was rather conservative, consisting of medications, injections and physical therapy and no surgery. (R. 20) The ALJ referenced as well Blackiston's varied activities of daily living, and the fact that on at least one occasion the record reflected that she sprained her ankle while gardening. (R. 20, 220) The state agency physicians assessed Blackiston's RFC at the full range of medium work level, (R. 184-90, 255-61), but the ALJ, after considering all of the medical evidence, including the various treatment records from Drs. Young, Edwards and Joiner, pegged it at light work. (R. 19-22) See 20 C.F.R. §404.1567(b) ( "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good

8

deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling or arm or leg controls.")

The ALJ satisfied his duty to examine all the medical evidence of record, and the decision not to follow the functional assessment prepared by Dr. Joiner in December, 2005 is supported by substantial evidence. Dr. Joiner's assessment is far more restrictive than that arrived at by the state agency reviewing physicians. Further, the ALJ noted that throughout the period of time that Dr. Joiner treated Blackiston, he did not make any change to the work restriction instituted by treating physician Dr. Young that Blackiston work only on light duty. (R. 21) The only records in the administrative record from Dr. Edwards likewise state that Blackiston was restricted to light duty during the summer of 2005. (R. 294-98) Obviously, the ALJ found it difficult to reconcile the fact that Blackiston was released by her treating physicians to light duty work, a medical judgment that Dr. Joiner never altered, with Dr. Joiner's December, 2005 functional assessment that Blackiston would be limited to four hours standing/walking and one hour sitting a day. (R. 299-300) There is nothing in the record to support the limitations reflected in Dr. Joiner's December, 2005 checklist opinion.

One additional point tends to undermine Dr. Joiner's assessment. When asked by a long term disability insurer to complete a Capabilities and Limitations Worksheet on Blackiston, Dr. Joiner declined to provide any opinion, stating that "Patient out of work prior to referral which we have not changed. If work capabilities in question recommend FCE." (R. 301) It is apparent from this response that just two months prior to the ALJ's decision that Dr. Joiner did not feel comfortable in providing a disability opinion on Blackiston; rather, he recommended a Functional Capacity Examination. Given Dr. Joiner's reluctance to opine on Blackiston's

9

workplace capabilities and limitations in early 2007, it is difficult to see how the ALJ reasonably could have accorded his less reticent opinion of thirteen months earlier controlling weight.

Given the evidence in this case, including the treatment records, the absence of any objective medical evidence of any injury to Blackiston's tailbone, the consistent references to work restrictions at the light duty level, and the state agency physicians' assessments that Blackiston retained the capacity to work at the medium level, it is clear that Dr. Joiner's December, 2005 checklist reference that Blackiston was limited to four hours standing/walking and one hours sitting is neither well-supported nor consistent with the other substantial medical evidence in this case. As such, it was not error for the ALJ to accord little weight to Dr. Joiner's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527 (d)(2); Social Security Ruling 96-2p.

## IV.

For the foregoing reasons, the undersigned recommends that, given the standard required for review of the Commissioner's administrative decision, this case must be affirmed. The ALJ's decision not to give controlling weight to the disability opinion of Dr. Joiner, especially here where he declined to render a similar opinion thirteen months later, is consistent with the regulations because there is significant medical evidence to contradict that opinion, especially the lack of any objective evidence of a tailbone injury, the conservative treatment rendered to Blackiston and the consistent references in her medical records that she should be restricted to light duty work. Accordingly, it is RECOMMENDED that Blackiston's motion for summary judgment be denied and the Commissioner's motion for summary judgment be granted.

In recommending that the decision of the Commissioner be affirmed, the undersigned does not suggest that Blackiston is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would

reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Blackiston's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence.

The Clerk is directed to transmit the record in this case to Hon. Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 637(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of Court hereby is directed to send a copy of this Report and Recommendation to all counsel of record.

ENTER: 16th day of April, 2008.

Michael F. Urbanski
United States Magistrate Judge